UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

JAMES RIVER INSURANCE COMPANY      CIVIL ACTION NO.: 2:25-cv-35-HSO-BWR

v.      JUDGE:

RAPID ANALYTICS, LLC,
FERRCANN, INC., and
SADUJA, LLC      MAGISTRATE JUDGE:

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff James River Insurance Company ("James River") brings this action seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that it owes no obligation to provide insurance coverage to its insured, defendant Rapid Analytics, LLC ("Rapid"), in connection with any claim arising from the suspension and ultimate termination of Rapid's license to test medical cannabis by the Mississippi State Department of Health ("MSDH"), including without limitation any coverage for the default judgment of over $6.3 million obtained against Rapid by defendants FerrCann, Inc. ("FerrCann") and Saduja, LLC ("Saduja") or for the claims asserted therein.

### INTRODUCTION

1.

Rapid is a laboratory testing company formerly licensed by MSDH, through the Mississippi Medical Cannabis Program, to analyze medical cannabis for potency and toxins before distribution to end users.

2.

According to the findings of an MSDH investigation, which Rapid failed to contest through administrative hearing or appeal, and are now final, Rapid's cannabis testing license was revoked by MSDH due to "widespread, flagrant, continuous and willful violations that place[d] the public's health and safety at risk[.]"

1

3.

Among other things, MSDH found Rapid to have:

a. "altered analytical testing data to ensure product samples 'passed' compliance testing";

b. "generated and reported COAs [Certificates of Analysis] with passing results for product samples without supporting analytical test data";

c. "knowingly reported results that were not valid due to failed quality control, missing quality control or no quality control";

d. "altered the parameter value of the LOQ [Limit of Quantitation] and LOD [Limit of Detection] for pesticides, mycotoxins, and residual solvents multiple times in 2023 from the original value specified in the SOP [Standard Operating Procedures] submitted with Rapid's application for licensure and approved by the Department";

e. "intentionally changed its methodology and failed to detect all regulated pesticides at the required action limits" by using testing values that would render detection of regulated pesticides "scientifically implausible";

f. "report[ed] compliance samples that did not have any associated analytical data, which indicates that the particular tests were never performed relative to the specific samples";

g. "deviated significantly from its approved SOP and method validation for cannabinoid potency and manipulated sample injection volumes to obtain optimized potency results";

h. "altered results which made the sample's testing status change from 'FAIL' to 'PASS'", when such changes "were not supported by actual testing performed but rather attributable to [Rapid's] data manipulation";

i. "fraudulently altered data to obtain an end result that would be more favorable to the client"; and

j. "intentionally misrepresented the analytical results."

4.

Once MSDH uncovered Rapid's "flagrant" and "fraudulent" cannabis testing operation, Rapid effectively closed its doors and walked away from the resulting damage. It failed to contest MSDH's findings, thus offering no defense to MSDH's revocation of Rapid's testing license and the resulting elimination of its business. It failed to respond to a lawsuit filed by defendants FerrCann and Saduja, or even provide the suit or other pleadings to James River, allowing a default judgment of over $6.3 million to enter against it. It failed to provide James River prompt and adequate notice of any claims, failed to immediately provide James River with any demands, suits and legal pleadings filed against it, and failed to respond to James River's numerous requests for documents and information. Instead, Rapid cancelled its insurance policy for a partial return of the premium effective April 26, 2024—after Rapid had been sued by FerrCann and Saduja, which it ignored.

5.

Rapid's former business address is vacant and James River's written attempts to contact Rapid at that location were returned as undeliverable.

6.

Although Rapid initially retained counsel to assist with the MSDH suspension and investigation, Rapid terminated its counsel while the MSDH investigation was ongoing and refused either to enter into a settlement that its counsel had negotiated with MSDH or, alternatively, to contest the MSDH charges through the administrative hearing and appeal process. Thus, Rapid allowed the permanent revocation of its cannabis testing license to become final rather than accepting any alternative resolution, presenting any legal or factual defense, or contesting MSDH's findings of widespread knowing, intentional, willful, and fraudulent conduct.

7.

After MSDH issued its Notice of Intent to Revoke License No. TESL000301 (Rapid's testing license number) on February 21, 2024, Rapid ceased all communication with James River and ignored James River's numerous requests for information.

8.

Rapid cancelled the claims-made insurance policy that James River issued to it (the "Policy"), effective as of April 26, 2024, in exchange for a partial return of premium, despite Rapid's knowledge of a pending suit against it.

9.

Although Rapid had initially sent James River a copy of MSDH's December 20, 2023 Notice of Emergency Suspension of Rapid's license (which did not include MSDH's findings of fraud), Rapid never informed James River of any developments in the investigation or administrative hearing process and never provided James River with a copy of the resulting Notice of Intent to Revoke License NO. TESL000301 or the findings on which that action was based.

10.

Rapid was sued by defendants FerrCann, Inc. and Saduja, LLC for compensatory and punitive damages arising from Rapid's cannabis testing operations in an action captioned *FerrCann, Inc. and Saduja, LLC v. Rapid Analytics, LLC and John Does 1-5*, Civil Action No. 24-KV-0006-D (Adams County Circuit Court), but Rapid failed to provide James River with the complaint or other filings.

11.

According to court records, on March 18, 2024, FerrCann and Saduja served on Rapid's registered agent an Application to Clerk for Entry of Default and Supporting Affidavit, seeking to

default Rapid for its failure to respond to the lawsuit. Rapid never provided that filing or any other to James River.

12.

As James River has since learned, FerrCann and Saduja alleged in their complaint that they owned and operated a cannabis dispensary (FerrCann) and licensed cultivator (Saduja), and incurred damage when MSDH issued a state-wide alert on December 21, 2023, requiring all cannabis operators to quarantine products tested by Rapid, thus removing those products from the stream of commerce until additional testing could be completed, allegedly harming their sales and business reputation.

13.

In their complaint, FerrCann and Saduja further alleged that the ownership group behind Rapid had encountered similar issues in other states, stating:

> Unfortunately, this is not the first company Rapid's common ownership has encountered issues in cannabis testing. Upon information and belief, Rapid's owners in other entities have had licenses revoked, suspended, or surrendered in other states for the very same faulty testing committed in this State.

14.

Rapid took no action to defend itself in the lawsuit, thus permitting the Circuit Court to enter a default judgment of over $6.3 million in favor of FerrCann and Saduja.

15.

According to the return of service and counsel's certificate of service in the Circuit Court record, Rapid was duly served and had actual notice of the lawsuit and application for default and received copies of those filings through its registered agent. Yet Rapid failed to provide any of that information to James River, failed to explain anything about the case or underlying events to

5

James River, and failed to take any step to protect itself, defend the suit, or prevent a default judgment from entering in the full amount requested by FerrCann and Saduja, resulting in prejudice to James River.

16.

James River learned of the default judgment only after it was entered when counsel for FerrCann and Saduja contacted James River seeking payment.

17.

After several attempts to contact Rapid about the judgment, James River finally received a response from Rapid's counsel on September 6, 2024.  James River offered to provide Rapid a defense when it learned of the default judgment, subject to a full reservation of rights, and notified Rapid of its right to select independent counsel in light of the coverage dispute, which Rapid elected to do.  But James River is not aware of Rapid making any effort to lift the default judgment and, according to Circuit Court records, Rapid is still yet to appear.

18.

James River seeks a judgment from this Court declaring that it has no duty to indemnify or defend the claims asserted in the FerrCann and Saduja lawsuit, or any other claims arising from the suspension and revocation of Rapid's cannabis testing license, because:  (1) those claims arise from a widespread scheme of fraudulent testing and reporting found by MSDH, which Rapid failed to contest, resulting in a final administrative order revoking Rapid's cannabis testing license; (2) Rapid failed to provide James River timely and adequate notice of suit, or any court filings, which is a condition precedent to coverage under the Policy; (3) Rapid failed to cooperate with James River's investigation after notifying James River of the December 20, 2023 Notice of Emergency Suspension by MSDH in repeatedly ignoring James River's requests for information and failing

to provide James River with the information required under the Policy, including the filings in the FerrCann and Saduja lawsuit, the MSDH findings and revocation order, and other information relating to the lawsuit and MSDH investigation; and (4) the claim is otherwise excluded from coverage under the Policy based on the exclusions described further below.

## JURISDICITON AND VENUE

### 19.

This court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

### 20.

The default judgment obtained by FerrCann and Saduja is for the total amount of $6,339,395.84 and the coverage limits under the applicable Professional Liability Coverage Part of the Policy are $1,000,000 per claim and in the aggregate.

### 21.

James River is a surplus lines insurer incorporated in Ohio and maintaining its principal place of business in Virginia. James River is therefore a citizen of Ohio and Virginia. None of the defendants are citizens of Ohio or Virginia and, therefore, complete diversity exists between the parties.

### 22.

Rapid is a limited liability company formed under the laws of Louisiana and licensed to do business in Mississippi. Rapid's sole member is Dr. Jeffrey Keller, an individual domiciled in Baton Rouge, Louisiana, and Rapid is therefore a citizen of Louisiana for purposes of diversity jurisdiction.

23.

FerrCann owns and operates a cannabis dispensary in Lamar County, Mississippi. It is a Mississippi corporation with its principal place of business at 204 W. Front Street, Hattiesburg, Mississippi, and is therefore a citizen of Mississippi for purposes of diversity jurisdiction.

24.

Saduja is a is a licensed cannabis cultivator operating in Lincoln County, Mississippi. It is limited liability company organized under the laws of Mississippi and has the following members:

(1)    Member Marla Jessica Castro Chua is an individual domiciled in Mandeville, Louisiana, and is therefore a citizen of Louisiana;

(2)    Member NoMag, LLC is a limited liability company with the following members:

    (a)    Member Ryan Neal is domiciled in New Orleans, Louisiana, and is therefore a citizen of Louisiana; and

    (b)    Member Janet Connell is domiciled in Abita Springs, Louisiana, and is therefore a citizen of Louisiana.

Accordingly, NoMag, LLC is a citizen of Louisiana for purposes of diversity jurisdiction.

(3)    Member Brian Cullum is domiciled in Madison, Mississippi, and is therefore a citizen of Mississippi;

(4)    Member Dudley F. Lampton is domiciled in Natchez, Mississippi, and is therefore a citizen of Mississippi;

(5)    Member Ella Hayes is domiciled in Bogue Chitto, Mississippi, and is therefore a citizen of Mississippi;

(6)    Member Jordan Reece Merchant is domiciled in Canton, Mississippi, and is therefore a citizen of Mississippi;

(7)    Member Sagan L. King is domiciled in Summit, Mississippi, and is therefore a citizen of Mississippi;

(8)    Member Susan Proaps is domiciled in Bogue Chitto, Mississippi, and is therefore a citizen of Mississippi;

8

(9)     Member Thomas Merchant is domiciled in Morton, Mississippi, and
          is therefore a citizen of Mississippi; and

(10)    Member Phillip Trent Fivecoat is domiciled in Cypress, Texas, and
          is therefore a citizen of Texas.

Accordingly, Saduja is a citizen of Louisiana, Mississippi, and Texas for purposes of diversity jurisdiction.

25.

This Court has personal jurisdiction over defendants Rapid, FerrCann, and Saduja because each maintained its principal places of business in Mississippi, each regularly conducted business in Mississippi at all relevant times, and this case arises out of their respective business in Mississippi including their participation in the Mississippi Medical Cannabis Program regulated by MSDH.

26.

Venue is proper in the court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**FACTUAL BACKGROUND**

**<u>MSDH Investigation</u>**

27.

MSDH's findings of fraudulent conduct by Rapid, which Rapid failed to contest, resulted in the revocation of Rapid's license to operate as a Mississippi medical cannabis testing facility and the effective termination of its business operations, a quarantine on the products tested by Rapid until those products could be retested by another laboratory, the underlying lawsuit by FerrCann and Saduja, and the resulting default judgment of over $6.3 million obtained by them.

Other third parties may have additional claims for damages arising from Rapid's misconduct of which James River is not yet aware.

28.

Rapid formerly operated a medical cannabis testing facility that was licensed in Mississippi to conduct regulatory compliance testing to analyze the safety and potency of medical cannabis and medical cannabis products before retail sale to the public.

29.

On December 20, 2023, MSHD issued a Notice of Emergency Suspension to Rapid after an MSHD records audit revealed "significant deviations" from testing regulations that posed a "public health risk."

30.

The next day, December 21, 2023, MSHD issued an alert to cannabis operators requiring a hold on products tested by Rapid, thereby preventing those products from entering the stream of commerce until further testing could be completed.

31.

In the months that followed, MSHD continued to investigate Rapid's testing operations by collecting documents from Rapid, inspecting Rapid's testing facility, software, and samples, and interviewing Rapid employees and representatives.

32.

As a result of its investigation, MSDH found that Rapid "willfully," "knowingly," "intentionally," and "fraudulently" manipulated its testing procedures and altered or misrepresented test results to falsely report desired outcomes that were not supported by valid test data or for which no test data existed.

33.

MSDH concluded that Rapid's misconduct was "widespread, flagrant, continuous, and willful[.]"

34.

On February 21, 2024, MSDH issued a Notice of Intent to Revoke License No. TESL000301 (Rapid's testing license) asserting that "Rapid's violations show an indifference to the safety of those who are intended to be protected by the very services it is licensed to provide and its failure to comply with applicable regulations and standards demonstrates a disregard of its duty to protect public welfare and the integrity of the Mississippi Medical Cannabis Program."

35.

The MSDH's February 21, 2024 Notice also assessed a fine of $1,000,000.00 against Rapid for hundreds of regulatory violations identified by MSDH, calculated as $5,000 per violation for two hundred identified violations.

36.

In the February 21, 2024 Notice, MSDH notified Rapid of its right to appeal by submitting a written request for administrative hearing to the Department within 20 days of the Notice.

37.

Upon information and belief, Rapid did not exercise its right to an administrative hearing or subsequent judicial review.  Instead, once caught, Rapid abandoned its testing license and business operations and failed to take reasonable steps to manage the fallout, limit the resulting damage, or rectify the violations identified by MSDH.  If Rapid had any defenses to the MSDH

allegations, it failed to raise those defenses through the administrative hearing process and thereby waived its right to contest the MSDH findings.

38.

Rapid's medical cannabis testing license was officially revoked by MSDH effective March 13, 2024.

### The FerrCann and Saduja Suit Against Rapid

39.

While the MSDH investigation into Rapid's fraudulent operations was ongoing, defendants FerrCann and Saduja filed a lawsuit against Rapid alleging that they had been damaged by Rapid's conduct because MSDH required cannabis products tested by Rapid to be quarantined until additional testing could be performed, allegedly causing lost sales and other related damages.

40.

According to court records, that lawsuit was allegedly served on Rapid through its registered agent on February 7, 2024—about one week after MSDH's on-site inspection of Rapid's testing facility.

41.

Rapid never provided that lawsuit to James River or took any steps to respond to it.

42.

According to court records, on March 18, 2024—five days after MDSH officially revoked Rapid's testing license—counsel for FerrCann and Saduja allegedly served Rapid's registered agent with an Application to Clerk for Entry of Default and Supporting Affidavit, asserting that Rapid had been duly served with process and had failed to answer or otherwise defend the claims asserted in the complaint.

43.

Rapid never provided that  filing to James River nor took any steps to address it.

44.

According to court records, a default judgment hearing was held in the FerrCann and Saduja suit against Rapid on May 29, 2024, and a default judgment against Rapid was signed the next day.  The resulting judgment awarded to FerrCann and Saduja the full amount of damages requested, totaling $6,339,395.84.

45.

James River first learned that Rapid had been defaulted and was subject to a default judgment when it received a demand letter from counsel for FerrCann and Saduja enclosing the default judgment and demanding payment.

**<u>Rapid's Failure to Give Adequate Notice to or Cooperate with James River</u>**

46.

Rapid failed to provide James River with any demand, notice, summons, complaint, or other process or pleading it received pertaining to the FerrCann and Saduja lawsuit.

47.

On January 18, 2024, James River received notice through Rapid's insurance agent of the December 20, 2023 Notice of Emergency Suspension issued by MSDH, suspending Rapid's license to operate as a medical cannabis testing facility pending further investigation and administrative action by MSDH.

48.

James River acknowledged receipt of the notice the next day, January 19, 2024,  and issued a reservation of rights letter to Rapid on January 25, 2024.

49.

As James River explained to Rapid at the time, MSDH's Notice of Emergency Suspension did not constitute a "Claim" covered under the James River Policy because it was not a "written demand for monetary damages," as the term "Claim" is defined in the Policy.

50.

The Notice of Emergency Suspension did not assert any demand for money damages and was therefore not a "Claim" to which the Policy's insurance coverage could potentially apply.

51.

Although the Notice of Emergency Suspension was not a "Claim" under the Policy, James River expressly requested that Rapid provide it with any additional information James River should consider in its coverage determination, and that Rapid immediately notify James River of any further communications, legal papers, or any "Claim" that may be asserted. James River stated in its January 25, 2024 letter to Rapid:

> If you receive further communication regarding this matter, any legal papers, or a "Claim," please immediately notify James River so that we may review same on a timely basis and provide our position with respect to coverage under the Policy.

And similarly:

> If you have additional information that should be considered in James River's decision, please forward the information to James River's attention. In the event you receive any additional claims, demands, requests, notices, orders or suit papers related to this incident, please notify James River immediately so that it may review its position, as stated herein.

52.

James River further explained to Rapid that the claims-made Policy requires prompt notice of any "Claim" made against the insured, stating:

14

If a "claim" is made, the Policy requires that the insured [] give written notice to James River as soon as practicable, but in no event later than 60 days after the end of the "Policy Period" of any "Claim" made against the insured. The insured shall immediately forward to James River every demand, notice, summons or other process or pleading received [by] the insured. The insured will not, except at your own cost, voluntarily make any payment, assume any obligation, or incur any expense.

As a reminder, the Policy conditions require that you immediately send us copies of any correspondence or legal papers received in connection with a claim or suit and that you will not make a payment, assume any obligation, or incur any expense without James River's consent.  Failure to comply with these conditions may jeopardize coverage under the Policy.

53.

On February 16, 2024, Rapid informed James River by phone that a lawsuit had been filed and stated that it would provide a copy of the lawsuit to James River, but it never did so.

54.

James River made repeated attempts to obtain the lawsuit from Rapid but Rapid failed or refused to respond.

55.

On March 2, 2024, James River contacted Rapid to state it had still not received any lawsuit from Rapid and to again request that the suit be provided.

56.

A March 5, 2024, James River wrote to Rapid again and stated:  "If you were served with a lawsuit please send a copy for our review."  Rapid's manager, Ms. Mamie Henry, replied via email to thank James River for following up and promised to provide the suit as soon as possible, yet still she did not.

57.

On March 7, 2024, James River wrote to Rapid again and specifically highlighted the language of the James River Policy addressing Rapid's duties in the event of a claim or suit, including Rapid's duty to provide written notice as soon as practicable including the details of the claim or suit, and the duty to "immediately send us copies of any demands, notices, summonses or legal papers received in connection with the 'claim' or 'suit'" and to "[f]ully cooperate with us or our designee in the investigation, settlements, conduct [of] 'suits' or other proceedings[.]"

58.

James River notified Rapid at the time that it had repeatedly requested copies of any lawsuit filed, that Rapid was at risk of default if it had not responded to any pending suit, and that the failure to provide any such suit to James River had prejudiced James River's ability to review the suit and make any determination as to coverage. It stated:

> Your continued failure to send James River the legal papers you received may jeopardize any potential insurance coverage to which you may otherwise be entitled.

59.

Later that evening, Rapid responded by again thanking James River for its repeated follow up but still failed to send James River the lawsuit. Instead, Rapid sent only a list of legal questions that appeared to relate to a lawsuit or potential lawsuit Rapid might file against another party, and a single page labeled "Rapid law suit signature page" that contained only an attorney's signature block. It did not provide the suit against Rapid or any claim, demand, or communication relating to the suit, or any substantive information about the nature of any claim made against Rapid or the underlying facts.

16

60.

On March 8, 2024 James River again wrote to Rapid and asked: "Has a lawsuit been filed against Rapid Analytics LLC? If so, send a copy of the lawsuit for our review. The attached is not sufficient."

61.

James River never received any further response or information from Rapid.

62.

On March 13, 2024, James River sent Rapid two emails. The first stated: "The documents you sent on Friday are not a lawsuit. If you have been served a lawsuit, forward a copy so that we can review it."

63.

The second stated:

> You called [James River] on 2/16/2024 and said that a lawsuit had been filed against you. [James River] ha[s] been trying diligently since to have you send a copy of that lawsuit. On March 7, 2024, you sent the attached documents. I don't know what the list of questions is intended for, and the last page of a lawsuit filed 1/24/2024 is not a complete copy of the lawsuit. We cannot do anything with this.
>
> If the lawsuit was filed 1/24/2024 and served by at least 2/16/2024, you are likely in default by this time. You have seriously prejudiced James River's ability to timely review the lawsuit and any potential coverage that might exist under the Policy.

64.

Later that day, Rapid's insurance agent stated that she had been in communication with Rapid and that Rapid would provide James River with the lawsuit "tomorrow" (March 14, 2024), and that Rapid understood the urgency in providing James River any lawsuit filed. Still, Rapid did not provide the lawsuit.

65.

All of the forgoing communications occurred before FerrCann and Saduja filed their application for entry of default with the Adams County Circuit Court.  When there was still time to avoid the entry of default and the default judgment, Rapid disregarded James River's repeated requests for a copy of any pending lawsuit and explicit warnings about the potential consequences of a default if any lawsuit was not being addressed.

66.

On March 19, 2024, Rapid reportedly told its insurance agent that Rapid had not received any emails from James River—a claim that is highly implausible in light of the fact that Rapid previously replied to James River's emails and repeatedly thanked James River for its continued follow up.

67.

At any rate, on March 20, 2024, James River promptly sent another letter to Rapid's preferred email address (the same address James River had originally used, until Rapid responded from a different address), again reiterating its request for a copy of any lawsuit and again attaching its prior requests for the same information.  James River also sent the same letter again to Rapid via certified mail.  Rapid again did not respond.

68.

The certified mail was returned undelivered with a notation that Rapid's business office was vacant.

69.

On April 26, 2024, Rapid cancelled its James River Policy in exchange for a partial return of the premium, without having provided James River with a copy of the lawsuit or any update or

information about the MSDH investigation or any substantive information as to any claim filed against Rapid.

## REQUESTS FOR DECLARATORY RELIEF

### COUNT I:
### Coverage is Excluded Under the
### Commercial General Liability Coverage Part of the Policy

70.

James River incorporates the allegations from each of the preceding paragraphs as if fully set forth herein.

71.

James River issued Commercial General Liability and Professional Liability Policy No. 00135931-1 (the "Policy") to Rapid for the policy period of October 6, 2023, to October 6, 2024 (later cancelled by Rapid effective April 26, 2024), with a retroactive date of October 6, 2022.

72.

Relevant here, the Policy provides coverage on a claims-made basis in accordance with the terms and limitations of two separate coverage parts—the Commercial General Liability Coverage Part and the Professional Liability Coverage Part.

73.

The Commercial General Liability Coverage Part and Professional Liability Coverage Part are mutually exclusive. The former excludes coverage for all claims arising out of Rapid's professional services whereas the latter applies only to claims arising from Rapid's professional services.

74.

As stated in the Combined Policy Exclusions Endorsement to the Commercial General

Liability Coverage Part:

> This insurance does not apply to:
>
> **3.      Professional Liability**
>
> "Bodily injury", "property damage", "personal or advertising injury" or other consequential damages or loss arising out of providing or failure to provide any "professional services" performed by any insured or by others on behalf of any insured, for others, unless such coverage is specifically endorsed onto this Policy.
>
> This exclusion applies to and is inclusive of:
>
> **a.**  Any obligation to share damages with or repay anyone else who must pay damages arising out of "professional services"; including any obligation assumed under an "insured contract";
>
> **b.**  The negligent employment, investigation, hiring, supervision, training, or retention of any person who rendered such "professional services".
> . . . .
>
> For purposes of this endorsement, the following definitions are added the **Definitions** section:
> . . . .
>
> **5.**  "Professional services" means services arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.  "Professional services" includes but is not limited to services and advice by licensed professionals as well as vocations which do not require licensure.

75.

Accordingly, there is no coverage under the Commercial General Liability Coverage Part

for claims arising out of Rapid's providing or failure to provide its professional services, including

laboratory testing services.

76.

By contrast, the Professional Liability Coverage Part of the James River Policy does provide coverage (subject to other applicable terms, conditions, exclusions, and limitations) for claims arising from Rapid's professional services. The Professional Liability Coverage Part provides, in pertinent part:

> We will pay on behalf of the "Insured" those sums in excess of the deductible that the "Insured" becomes legally obligated to pay as "Damages" and "Claims Expenses" because of a "Claim" first made against the "Insured" and reported to us in writing during the "Policy Period" by reason of a "Wrongful Act" in the performance of or failure to perform "Professional Services" by the "Insured" or by any other person or entity for whom the "Insured" is legally liable. The "Wrongful Actus" must have been committed on or subsequent to the "Retroactive Date" specified in the Declarations and before the end of the "Policy Period".

77.

"Professional Services" are defined in the Professional Liability Coverage Part to mean "only those services specified in the Declarations and performance by the 'Named Insured' for others for a fee. The Declarations identify Rapid's business operations as "Medical Marijuana and Hemp Testing Lab."

78.

Thus, for any claim arising from Rapid's professional services, the appropriate coverage part for determining the terms and conditions of coverage, if any, is the Professional Liability Coverage Part, not the Commercial General Liability Coverage Part.

79.

There is no coverage under the Commercial General Liability Coverage Part for any claims arising from Rapid's providing or failure to provide medical marijuana and hemp testing laboratory services.

80.

Even if FerrCann's and Saduja's claims against Rapid were not excluded under the Commercial General Liability Coverage Part by virtue of the professional services exclusion (which they are), they would be excluded from that coverage part based on other applicable exclusions.

81.

For instance, the Commercial General Liability Coverage Part excludes coverage for damage to impaired property or property not physically injured, and excludes coverage for recall of products, work, or impaired property, both of which would exclude coverage for FerrCann's and Saduja's claims if not otherwise excluded.

82.

The Commercial General Liability Coverage Part provides in pertinent part:

> This insurance does not apply to:
> . . . .
>
> **m.    Damage To Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

83.

Under the Policy:

> "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> **a.**  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> **b.**  You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

84.

Coverage is excluded under the foregoing exclusion because the cannabis tested by Rapid was not physically injured by the faulty test results and the alleged damage arose out of a defect, deficiency, inadequacy or dangerous condition in Rapid's work.

85.

The Commercial General Liability Coverage Part further provides:

> This insurance does not apply to:
> . . . .
>
> **n.    Recall Of Products, Work Or Impaired Property**
>
> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1) "Your product";
> (2) "Your work"; or
> (3) "Impaired property";
>
> if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition it in.

23

86.

Coverage is excluded under the foregoing exclusion because the damages claimed by are for the loss of use, withdrawal, recall, inspection, replacement, removal, or disposal of Rapid's work, which was allegedly withdrawn or recalled from the market by MSDH because of a known or suspected defect, deficiency, inadequacy or dangerous condition in Rapid's work.

87.

Coverage is further excluded under the Commercial General Liability Coverage Part because Rapid's knowing, willful, intentional, and fraudulent conduct does not constitute an "occurrence" within the meaning of the Policy, which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Commercial General Liability Coverage Part expressly excludes coverage for damages to bodily injury or property damage "expected or intended from the standpoint of the insured."

88.

Coverage is further excluded under the Commercial General Liability Coverage Part because of Rapid's failure to give prompt written notice to James River as required under the Policy.

89.

The Restricted Reporting Endorsement provides in pertinent part:

**Duties in the Event of "Claim" or "Suit"**

a.  The insured shall provide written notice to us as soon as practicable following receipt of any "claim" or "suit".  The insured shall also include in such written notice details of the "claim" or "suit".

b.  If a "claim" or "suit" is received by any insured:

    **(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

    **(2)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**c.** You and any other involved insured must:

. . . .

    **(2)** Fully cooperate with us or our designee in the investigation, settlements, conduct of "suits" or other proceedings and the enforcing of any right or contribution or indemnity against another who may be liable to you.  You shall, as we at our discretion may require, attend hearings and trials, assist in securing and giving evidence, and obtaining the attendance of witnesses; and

. . . .

"Claim" means a written demand for monetary damages.

90.

Coverage is excluded under the foregoing conditions because Rapid failed to provide written notice of the claim or suit, failed to provide the details of the claim or suit, failed send James River copies of any demands, notices, summonses or legal papers received in connection with the claim or suit, and failed to fully cooperate with James River in the investigation, settlement, or conduct of the suit.

91.

Rapid's failure to comply with its duties in the event of a claim or suit prejudiced James River's ability to investigate, respond to, and participate in the defense of the suit, resulting in entry of a default judgment without James River's knowledge and without opposition in the full amount demanded by FerrCann and Saduja.

92.

For each of these reasons, no coverage exists under the Commercial General Liability Coverage Part of the Policy for the claims asserted by FerrCann and Saduja, or for any other claim that may arise out of Rapid's fraudulent and defective performance or non-performance of its professional services (none of which, if they exist, have been reported to James River).

**COUNT II:**
**Coverage is Excluded under the**
**Professional Liability Coverage Part of the Policy**

93.

James River incorporates the allegations from each of the preceding paragraphs as if fully set forth herein.

94.

Although the Professional Liability Coverage Part of the James River Policy generally applies to claims arising from Rapid's performance or failure to perform professional services, no coverage exists for any claim arising from Rapid's knowing, intentional, or fraudulent conduct.

95.

The Professional Liability Coverage Part states in pertinent part:

> This Policy does not apply to any "Claim" against the "Insured":
> . . . .
>
> e.   Based on or directly or indirectly arising out of or resulting from:
>
>    (1) Any act committed with knowledge of its wrongful nature or with the intent to cause damage; or,
>
>    (2) The gaining by the "Insured" of any personal profit, gain or advantage to which the "Insured" is not legally entitled; or
>
>    (3) Any disputes over fees for services; or,

(4) Any fraudulent, or dishonest act.  However, we shall defend such allegations against the "Insured" if it involves a "Claim" otherwise covered under the Policy until final adjudication; or,

(5) Judgments or awards arising from acts or omissions deemed uninsurable by law.

96.

FerrCann and Saduja alleged in the underlying suit that they suffered damage because MSDH imposed a quarantine on cannabis products tested by Rapid, allegedly causing those parties to lose sales, inventory, going concern value, and business reputation.

97.

The quarantine of products tested by Rapid arose from MSDH's investigation into "widespread", "flagrant", and "willful" misconduct by Rapid, including:

- "knowingly reporting results that were not valid";

- "intentionally chang[ing] its methodology" to render detection of regulated pesticides "scientifically implausible";

- "reporting compliance sample results that did not have any associated analytical data, which indicates that the particular tests were never performed relative to the specific samples";

- "alter[ing] results which made the sample's testing status change from 'FAIL' to 'PASS'";

- "data manipulation" that was "not supported by actual testing performed";

- "fraudulently alter[ing] data to obtain an end result that would be more favorable to the client"; and

- "intentionally misrepresent[ing] the analytical results."

98.

No coverage exists under the Policy for any alleged claim based on or directly or indirectly arising out of Rapid's willful, knowing, and intentional misconduct as identified by MSDH, including any claims for damages due to MSDH's quarantine of Rapid-tested products such as the claims alleged by FerrCann and Saduja in the underlying suit.

99.

Coverage is additionally excluded under the Professional Liability Coverage Part because Rapid failed to give written notice, immediately forward every demand, notice, summons or other process or pleading received, or cooperate with James River and provide James River with all information and assistance which it reasonably requested.

100.

Rapid's lack of attention and responsiveness to James River's requests and concerns prejudiced James River's ability to evaluate coverage, liability, and damages in connection with the claims asserted against Rapid.

101.

The Professional Liability Coverage Part provides:

   2.  Notice of "Claims"

   As a condition precedent to our obligations under this Policy, you shall give written notice to us as soon as practicable, but in no event later than 60 days after the end of the "Policy Period" of any "Claim" made against you.  You shall immediately forward to us every demand, notice, summons or other process or pleading received by you or your representative.  You will not, except at your own cost, voluntarily make any payment, assume any obligation, or incur any expense.

3.   Assistance and Cooperation

You shall cooperate with us and provide us with all information and assistance which we reasonably request including without limitation attend hearings, depositions and trials and assisting in effecting settlements, securing and given evidence and conducting the defense of any "Claim" covered by this Policy.  You shall do nothing that may prejudice our position.

102.

Rapid breached these conditions to coverage and prejudiced James River's position.

103.

Accordingly, no coverage exists under the Policy for the claims asserted by FerrCann and Saduja or for any other claim that may exist (if any) for which Rapid has not provided timely and adequate notice within the time required by the claims-made Policy, has not provided legal process or pleadings, and has not provided its full cooperation including all information and assistance requested by James River.

104.

In addition, coverage for claims arising from MSDH's investigation and administrative action against Rapid, including its quarantine of cannabis products tested by Rapid and any resulting damages, may be excluded under the Professional Liability Coverage Part's exclusion for "Disciplinary Proceedings."

105.

That exclusion provides:  "This Policy does not apply to any 'Claim' against the 'Insured' . . . . Based on directly or indirectly arising out of any 'Disciplinary Proceeding'."

106.

The Policy defines "Disciplinary Proceeding" as "any proceeding by a regulatory or disciplinary official or agency to investigate charges made by a client or former client alleging

29

professional misconduct in performing or failing to perform 'Professional Services'."

107.

James River is not yet aware of whether MSDH investigation into Rapid's professional misconduct related to charges made by a client or former client of Rapid, but multiple news stories regarding the MSDH investigation report that it originated from an anonymous tip. Upon information and belief, discovery may reveal whether MSDH's investigation involved charges by a client or former client of Rapid and thus determine whether the "Disciplinary Proceeding" exclusion also applies to any resulting claim, in addition to the numerous other dispositive exclusions described above.

**Wherefore,** plaintiff James River Insurance Company respectfully requests a judgment:

A.    Declaring that no coverage exists under Commercial General Liability and Professional Liability Policy No. 00135931-1 for claims arising from Rapid's improper cannabis testing operations as uncovered by MSDH, and from MSDH's investigation and administrative actions in response to Rapid's improper actions, including the claims of FerrCann and Saduja and the default judgment obtained by them against Rapid.

B.    Declaring that James River owes no duty to defend Rapid from any such claims;

C.    Awarding costs to James River; and

D.    Granting such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Chloé M. Chetta*
Chloé M. Chetta, MS Bar No. 106770
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA 70112
T: 504-589-9700
F: 504-589-9701
cchetta@barrassousdin.com

*Counsel for James River Insurance Company*